UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YURIY B. MANKOVSKIY<br>Plaintiff,<br><br>v.<br><br>FINANCIAL RECOVERY SERVICES,<br>INC., BRIAN C. BOWERS, PHILLIP<br>LARSON and BANK OF AMERICA f/k/a<br>MARYLAND NATIONAL BANK,<br>Defendants. | Civil Action No. 11-CV-11558-RWZ |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR JUDGMENT ON THE PLEADINGS/SUMMARY JUDGMENT

### INTRODUCTION

Pursuant to Fed. Rules Civ. P. 12 (c) and 56, the Defendants Financial Recovery Services, Inc. ("Financial" or "FRS"), Brian Bowers ("Bowers") and FIA Card Services, N.A. ("FIA"), wrongly named in the Complaint as "Bank of America f/k/a Maryland National Bank", respectfully submit this memorandum in support of their motion for judgment on the pleadings/summary judgment. The claims set forth in the Complaint filed by the Plaintiff Yuriy B. Mankovskiy are without merit do not state a valid claim.

### ALLEGATIONS AND UNDISPUTED FACTS

On June 22, 2010, Plaintiff's account was placed with FRS for collection. [Docket No. 13, Aff. of Brian Bowers, ¶ 5].[1] FRS then obtained a copy of Plaintiff's credit report, to assist it with its efforts to collect on Plaintiff's debt. *Id.* ¶ 17. On or about June 23, 2010, pursuant to its procedures, FRS processed the account at issue and requested that its third

---

[1] The Affidavits of Brian Bowers and Frank Fribley were previously filed along with the Defendants' Answers.

party mail provider, CompuMail, Inc. ("CompuMail"), send an initial collection letter to Plaintiff.  *Id.* ¶ 10, [Docket No. 14, Aff. of Fribley, ¶ 6].  That same day, CompuMail processed the request and sent a collection letter to Plaintiff ("Letter"), that included the following language:

> UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID.  IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION OF IT, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION.  IF YOU REQUEST OF THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.
>
> ******
>
> THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  THIS COMMUNICATION IS FROM A DEBT COLLECTOR.  SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

Aff. of Bowers, ¶ 10, Exs. 1 and 2, Aff. of Fribley, ¶ 7, Ex. A.  The letter was never returned to FRS as undeliverable.  Aff. of Bowers, ¶ 7, 11.  The actions of both FRS and CompuMail were done in the regular course of business.  *See generally* Aff. of Bowers (Specifically ¶¶ 6, 12 and 14) and Aff. of Fribley (Specifically ¶ 8).  Subsequently, on July 7, 2010, September 2, 2010 and September 21, 2010, three additional letters were sent to Plaintiff.  Aff. of Bowers, ¶ 14.

On October 6, 2010, Plaintiff sent a letter to FRS, disputing the debt and requesting verification of the debt.  [Docket No. 1, Pl. Compl. ¶ 14].  FRS received Plaintiff's letter on or about October 15, 2010 and immediately closed its file and returned the account to its client.  Aff. of Bowers, ¶ 15.  Despite FRS' closing of the file, Plaintiff sent three more letters to FRS, making various demands and litigious threats.  [Docket No. 1, Pl. Compl. ¶¶ 16-18].  Plaintiff commenced this matter on September 6, 2011.  [Docket 1, Pl. Compl.].

<u>ARGUMENT</u>

I.     <u>STANDARD OF REVIEW</u>

    A.     <u>Fed. R. Civ. P. 12(c)</u>

Pursuant to Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings. "[T]o survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that `raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir.2008)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)  Moreover, questions of statutory interpretation are questions of law ripe for resolution at the pleadings stage. *Gen. Motors Corp. v. Darling's*, 444 F.3d 98, 107 (1st Cir. 2006) ("Statutory interpretation typically raises questions of law engendering de novo review.").

B.    Fed. R. Civ. P. 56

Pursuant to Federal Rule of Civil Procedure 56(c), the court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if, viewing all factual disputes in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would prevent judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); *Montfort-Rodriguez v. Rey-Hernandez*, 504 F.3d 221, 224 (1st Cir. 2007). A genuine issue exists where "a reasonable jury could resolve the point in favor of the nonmoving party." *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000).  Once the moving party avers an absence of evidence to support the nonmoving party's case, the non-moving party must offer "definite, competent evidence to rebut the motion." *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir. 1991).

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).* Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48.  Therefore, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)(*citing Rossy v. Roche Prods., Inc.*, 880 F.2d 621,

624 (1st Cir.1989); *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 109-10 (1st Cir. 1988)); *see also Welch v. Ciampa*, 542 F.3d 927, 935 (1st Cir.2008) ("Although we give the nonmoving party the benefit of all reasonable inferences, a party cannot rest on `conclusory allegations, improbable inferences, [or] unsupported speculation' to defeat a motion for summary judgment.") (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

In accordance with these standards, the Plaintiff's FDCPA claims against FRS must fail as a matter of law because: (1) Plaintiff's dispute was untimely; (2) FRS ceased further collections from Plaintiff upon receipt of his initial dispute; and (3) FRS does not report credit information.  Plaintiff's FCRA claims against FRS and FIA fail because: (1) FRS had a permissible purpose to obtain Plaintiff's credit report; (2) FRS is not a furnisher of information; and (3) 15 U.S.C. § 1681s-2(f) does not exist.  Plaintiff's claims based on 209 CMR § 18.01 *et seq.* claims against FRS fail because FRS complied with the law and the claims are preempted by 209 CMR § 18.23.  Plaintiff's 940 CMR § 7.08 claims against FIA fail because Plaintiff did not provide the requisite notice, and FIA does not even own the subject account.  Accordingly, as there has been no violation of these regulations, Plaintiff's MGL 93A claim also fails.  Finally, Plaintiff has failed to allege any activity by Brian Bowers that would constitute a violation of any law, so Plaintiff's claims against Brian Bowers also fail.[2]

## II.     FRS DID NOT VIOLATE THE FDCPA.

### A.     FDCPA Standard

"When considering whether a particular collection notice violates the FDCPA, courts

---

[2]        The Plaintiff has yet to serve Phillip Larson, FRS' former employee.  Regardless, all claims against Mr. Larson fail for the same reasons set forth in this memorandum.

usually look to whether the objective `least sophisticated debtor' would find the notice improperly threatening or misleading." *Martin v. Sands*, 62 F. Supp. 2d 196, 199 (D. Mass. 1999), *citing Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (the "`least sophisticated debtor `standard has . . . been adopted by all federal appellate courts that have considered the issue.'").

However, "the least sophisticated consumer standard incorporates a 'concept of reasonableness' that is presumed to guide even the most naive debtor." *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir.1993)).  Moreover, "even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon,*  988 F.2d at 1319.

Whether or not a collection letter violates the FDCPA is a question of law.  *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2nd Cir. 2003) (upholding the district court's finding that the letter did not violate 15 U.S.C. §§ 1692e or 1692g as a matter of law).

B.      FRS did not violate 15 U.S.C. § 1692g(b) or 1692e(11).

Plaintiff asserts that FRS failed to provide him with the required notice under § 1692g(b) and that FRS failed to advise Plaintiff that it was a debt collector and that any information obtained would be used for debt collection as required by § 1692e(11).  As set forth below, both claims fail. Section 1692g(b) provides that:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt

collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b).

Section 1692e(11) provides that:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
*****

(11)   The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692g(b).

Conveniently, Plaintiff's Complaint references the last two letters FRS sent to him, not the first two.  Aff. of Bowers, ¶¶ 10 and 14.  However, on June 23, 2010, FRS, via CompuMail, sent an initial collection letter to Plaintiff, which provided both of the notices required by § 1692g and § 1692e(11).  *See* Aff. of Bowers, Exs. 1 and 2 and Aff. of Fribley, Ex. A.

Section 1692g only requires that a collector send a written notice setting forth the information provided for in said section. Numerous courts have held that the FDCPA does not require actual receipt; rather, all that must be shown is that the notice was mailed by the

debt collector and that the notice was not returned.  *See, e.g., Mahon v. Credit Bureau of Placer County*, 171 F.3d 1197 (9th Cir.1999); *Zamos II v. Asset Acceptance*, LLC, 423 F.Supp.2d 777 (N.D.Ohio 2006); *Johnson v. Midland Credit Management, Inc.,* No. 1:05 CV 1094, 2006 WL 2473004 (N.D.Ohio); *Van Westrienen v. Americontinental Collection Corp.*, 94 F.Supp.2d 1087 (D.Ore.2000); *Crain v. Pinnacle Financial Group of MN, Inc.*, 2007 WL 3408540 (E.D.Mich.) ("Denial of receipt, however, is irrelevant for purposes of the FDCPA. The statute does not require Defendant to prove Plaintiff actually received the letters.").

The *Mahon* court held that "section 1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector need not establish actual receipt by the debtor."  171 F.3d at 1201; *see also Zamos II,* 423 F.Supp.2d at 785-86 (quoting and relying on *Mahon*); *Van Westrienen*, 94 F.Supp.2d at 1097-98 (same).  Thus, whether or not Plaintiff received the notice is not a genuine issue of material fact.  *See Van Westrienen v. Americontinental Collection Corp.*, 94 F.Supp.2d 1087, 1097 (D.Ore. 2000) (stating that "The Ninth Circuit found no material issue of genuine fact as to whether the defendant sent the required notice and held that the defendant satisfied § 1692g(a).").

It bears noting that under the common law Mailbox Rule, "proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee." *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992); *see also Meckel v. Continental Resources Co.,* 758 F.2d 811, 817 (2d Cir. 1985) (properly mailed computer-generated notices can be presumed received).

FRS sent Plaintiff the validation notice required by the FDCPA, and FRS is entitled to summary judgment on Plaintiff's claim.  As set forth above, 15 U.S.C. § 1692g requires

that a validation notice be sent within five days of the initial communication with a consumer. 15 U.S.C. § 1692g. The FDCPA requires that the notice contain the amount of the debt, the name of the creditor to whom the debt is owed, a statement that the consumer has thirty days to dispute the debt, or the debt will be assumed to be valid by the debt collector; and that upon notice the debt collector will obtain verification of the debt and provide the consumer with the name and address of the original creditor, if different from the current creditor. 15 U.S.C. § 1692g (a)(1-5).

FRS complied with the requirements of 15 U.S.C. § 1692g in its entirety. Plaintiff was sent the validation notice on June 23, 2010. Aff. of Bowers, ¶ 10, Exs. 1 and 2; Aff. of Fribley, ¶ 7, Ex. A. Further, the validation notice fully complied with the requirements of 15 U.S.C. § 1692g(a)(1-5). *Id.* As the notice was not returned to FRS, it is presumed that Plaintiff received the notice. Aff. of Bowers, ¶ 13.

1.      <u>Plaintiff's dispute was untimely under the FDCPA</u>.

In light of the forgoing, Plaintiff's dispute of the debt in October, 2010, was untimely and FRS was not required to respond to Plaintiff's demand for verification. *See generally* § 1692g. However, even if Plaintiff's dispute was timely, FRS was justified in closing its file and not validating Plaintiff's dispute of the debt. Courts have unanimously confirmed that a debt collector can either cease collection efforts or provide verification upon receipt of a valid dispute. Contrary to Plaintiff's claim, a debt collector is not required to verify the debt, but instead may cease all collection activity on the debt. *See Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1031-1032 (6th Cir. 1992); *Jang v. A.M. Miller & Assocs.,* 122 F.3d 480 (7th Cir. 1997); *Guerrero v. RJM Acquisitions, LLC,* 499 F. 3d 926, 2007 U.S. App. LEXIS 20072, at

*35-36 (9th Cir. Aug. 23, 2007); *Wilhem v. Credico, Inc.*, 426 F.Supp.2d 1030 (D.N.D. 2006); *Zaborac v. Phillips and Cohen Assocs*, 330 F.Supp.2d 962, 966 (N.D.Ill. 2004); *Sambor v. Omnia Credit Servs., Inc.*, 183 F.Supp.2d 1234, 1243 (D. Haw. 2002); *Shimek v. Weissman, Nowak, Curry & Wilco*, 323 F.Spp.2d 1344, 1350 (N.D. Ga. 2003); *Bey v. Daimler Chrysler Servs.*, Civil No. 04-6186 (RBK), 2006 WL 1344080, at *6 (D.N.J. May 15, 2006); *Recker v. Central Collection Bureau, Inc.*, No: 1:04-CV-2037-WTL-DFH, 2005 WL 2654222, at *3 (S.D. Ind. Oct. 17, 2005).[3]

Accordingly, Plaintiff's claim that FRS failed to validate the debt fails as (1) FRS sent out a § 1692g notice, (2) Plaintiff never responded to the initial letter, (3) Plaintiff's dispute was untimely, and (4) FRS took no further action to try to collect on Plaintiff's debt.  In addition, Plaintiff's claim that FRS failed to provide him with the § 1692e(11) notice fails because FRS' initial letter included the required notice language.  Accordingly, Plaintiff's §§ 1692g and 1692e(11) claims fail.

C.      FRS did not violate any provision of 15 U.S.C. §§ 1692e or 1692f.

In addition, Plaintiff further alleges that FRS has violated additional subsections of §

---

[3]      The FTC has confirmed that a debt collector may cease collection activity without providing verification. A 1997 FTC Informal Staff Opinion Letter agreed that it is permissible under the FDCPA to cease collection of a debt rather than respond to a written dispute from a consumer received during the 30-day validation period. *Cass*, FTC Informal Staff Letter (Dec. 23, 1997). Specifically, the FTC stated that "[t]here is nothing in the FDCPA that requires a response to a written dispute if the debt collector chooses to abandon its collection effort with respect to the debt at issue. *Id.* (*citing Smith*, 953 F.2d at 1032).  Similarly, another FTC informal opinion letter states that when a debt collector receives a request for verification and decides not to pursue further collection efforts, "there is no requirement to furnish the documentation of the indebtedness to the consumer." *Krison*, FTC Informal Staff Letter (Mar. 3, 1992).

Although the opinions of the FTC are not binding on the Court, the FTC is the administrative body charged with enforcement of the FDCPA (pursuant to 15 U.S.C. § 1692l), and courts have found FTC opinions to be helpful and persuasive. *See, e.g., Romine v. Diversified Collection Serves., Inc.*, 155 F.3d 1142, 1147 & nn.3, 5 (9th Cir. 1998) (finding an informal FTC staff letter interpreting the FDCPA to be persuasive); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1327 n.8 (7th Cir. 1997) (giving due weight to an FTC opinion interpreting the FDCPA).

1692e and violated § 1692f.  Specifically, Plaintiff asserts that FRS violated §§ 1692e(2)(A) and e(10), which provide that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2)  The false representation of—
>
> > (A)      the character, amount, or legal status of any debt…..
>
> *****
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §§ 1692e(2)(A) and 1692e(10).  Plaintiff further alleges that FRS violated §§ 1692f and § 1692f(1), which set forth that:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1).

As set forth above, Plaintiff failed timely to dispute the account.  Plaintiff cannot now benefit from his own omissions, whether they be negligent or willful, and proceed with a claim against FRS.  As indicated above, FRS complied with the FDCPA's notice requirements.  Nonetheless, Plaintiff failed to timely dispute his debt, a fact that has led courts to hold that if a consumer fails to exercise his rights under the FDCPA, he cannot later use the same as a basis for his litigation.

In *Richmond v. Higgins*, the Eighth Circuit Court of Appeals held that where a debtor failed to dispute the account until after the 30-day validation period expired, the debtor could not later claim FDCPA violations on what was otherwise a previously undisputed account. *Richmond*, 435 F.3d 825 (8th Cir. 2006). As the basis of the dispute in Richmond existed long before the debtor's untimely dispute, the court stated that no valid claim existed and "[t]o hold otherwise would be to sanction consumer conduct that the FDCPA clearly did not contemplate." *Id., see also Lindbergh v. Transworld Systems, Inc.*, 846 F.Supp. 175 (D.Conn. 1994) (rejected a plaintiff's purported FDCPA cause of action on the ground that plaintiff failed to take advantage of the statutory debt validation procedure but, instead, instituted litigation); *Bleich v. The Revenue Maximization Group, Inc.*, 233 F.Supp.2d 496 (ED. NY 2002) (holding that if a debt collector includes the proper debt validation language, the allegation that a debt is invalid is insufficient upon which to make a claim under the FDCPA); *Bashore v. Resurgent Capital Services, L.P.*, 2011 WL 1304461 (E.D. Tex) (holding that as the plaintiff waited four months to notify the debt collector that she disputed the account, she could not be allowed to proceed with a claim that the collection efforts were illegal); *Carpenter v. RJM Acquisitions, LLC*, ___ F.Supp.2d ___, 2011 WL 2148342 (D. Minn.) (holding that a "consumer cannot circumvent the statute's procedural device to dispute the validity of a debt by filing an action pursuant to § 1692e on the sole basis that the debt is invalid.")

To permit consumers to forgo the dispute and validation procedures set forth in the FDCPA and in favor of litigation frustrates the FDCPA and burdens the courts with claims that could be resolved via a timely dispute and validation of the debt by the collector. As

one court has stated, in a context similar to the instant matter in which an untimely dispute under the FDCPA was first made before commencing litigation, it

> can only wonder why the plaintiff has chosen to impose the significant burden of litigation on both the defendant and this court, instead of simply following that cost-effective procedures provided by the FDCPA specifically designed to facilitate the exchange of information between debt collectors and debtors.

*Bleich*, 233 F.Supp.2d at 501.

Accordingly, because Plaintiff waited some four months to advise FRS that he disputed the account, he cannot now be allowed to proceed with a claim that FRS' collection efforts were illegal.  And because all of Plaintiff's claims against FRS, which have been insufficiently alleged, arise from the same fact pattern, all of Plaintiff's claims against it fail.

D.        FRS did not violate 15 U.S.C. § 1692e(2)(A).

Even if Plaintiff's FDCPA claims did not fail due to Plaintiff's delay in disputing the debt, an abundance of case law sets forth that the amount a debt collector may seek to collect is the amount that the creditor represents as being "authorized" (i.e., the creditor's interpretation of the agreement giving rise to the debt which establishes the debt and the amount owed).  *See e.g., Duffy v. Lanberg*, 215 F.3d 871 (8th Cir. 2000); *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002); *Axtell v. Collections USA, Inc.*, No. CV-02-536-PHX-DKD, 2002 WL 32595276 (D. Ariz. Oct. 22, 2002).  Within reasonable limits, a debt collector is entitled to rely on its client's statements concerning the balance of a debt.  *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162,1174 (9th Cir. 2006) (*citing Bleich v. Revenue Maximization Group, Inc.,* 233 F. Supp. 2d 496, 500-01 (E.D.N.Y. 2002)), *Beattie v. D.M. Collections, Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991). The FDCPA does not impose upon a debt collector any duty to independently investigate the claims presented by its clients. *Id.*

-13-

A debt collector should be able to rely on the representation and implied warranty from its client that the amount was due under the lease or the law. The FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt, nor does it require the debt collector to dispute the creditor's construction of a contract. *Axtell v. Collections USA, Inc.*, 2002 WL 32595276, at *8.

"Courts do not impute to debt collectors other information that may be in creditors' files -- for example, that debt has been paid or was bogus to start with." *Randolph v. IMBS, Inc.,* 368 F.3d 726, 729 (7th Cir. 2004). "Verification would be unnecessary if debt collectors were charged with the creditors' knowledge." *Id.* The *Randolph* Court further stated that "[w]e have not found any appellate opinion imputing creditors' knowledge to debt collectors." *Id.*

In light of the foregoing, given that Plaintiff failed to timely dispute the debt and that FRS was entitled to rely upon the information provided to it by the creditor, Plaintiff's claim that FRS misrepresented the debt fails and FRS is entitled to judgment in its favor.

E.      FRS did not violate 15 U.S.C. § 1692e(8).

Plaintiff further alleges that FRS violated § 1692e(8), which prohibits collectors from

> Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e(8).  FRS does not credit report or otherwise furnish information to any credit reporting agency.  Aff. of Bowers, ¶ 16.  Courts have held that the duty to report that an account is disputed under § 1692e(8) only arises if one elects to report credit information. *See Wilhelm v. Credico, Inc.*, 519 F.3d 416 (8th Cir. 2008) (citing to FTC Staff Commentary, 53

Fed.Reg. 50097-02, 50106 (Dec. 13, 1988)); *Black v. Asset Acceptance, LLC,* 2005 U.S. Dist. LEXIS 43264 at * 12-13 (N.D.Ga.2005), and in *Hilburn v. Encore Receivable Mgmt., Inc.,* 2007 WL 1200949 at *4 (D.Or.2007).

In *Wilhelm*, the Court held that the plaintiff's § 1692e(8) claim failed because the plaintiff failed to produce any evidence that the defendant had reported any information after receipt of a dispute. *Wilhelm*, 519 F.3d at 418. In this matter, Plaintiff simply cannot produce any evidence illustrating that (1) FRS furnished any information to the credit bureaus that would rebut the evidence submitted via the Affidavit of Brian Bowers, or (2) furnished any information to the credit bureaus after receipt of Plaintiff's dispute. Accordingly, Plaintiff's § 1692e(8) claim fails.

III.   THE DEFENDANTS DID NOT VIOLATE THE FCRA.

Plaintiff asserts that FRS violated 15 U.S.C. § 1681b(f) by accessing Plaintiff's credit report without a permissible purpose. Plaintiff further maintains that both FRS and FIA violated § 1681s-2(f) by failing to report that Plaintiff disputed the debt. However, as FRS had a permissible purpose to access Plaintiff's credit report, § 1681s-2(f) does not exist, and FIA was given no advance notice of the Plaintiff's purported dispute, Plaintiff's FCRA claims fail.

A.   FRS did not violate 15 U.S.C. § 1681b(f).

Plaintiff asserts that FRS did not have a permissible purpose for obtaining a copy of his credit report in June of 2010. Section § 1681b(f) sets forth that a consumer report can only be obtained for a purpose that is authorized by § 1681b. The FCRA allows collection agencies to pull credit reports, as it specifically provides that:

(a) Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

* * *

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer....

15 U.S.C. § 1681b(a)(3)(A).

Courts have consistently interpreted this provision to mean a debt collector or collection agency that access a consumer's credit report in connection with collection a debt does so with a permissible purpose. *See e.g. James v. Interstate Credit and Collection, Inc.*, No. Civ.A. 03-1037, 2005 WL 1806501, at *2, 4 (E.D. Pa. July 29, 2005); *Korotki v. Thomas, Ronald & Cooper, P.A.*, 131 F.3d 135 (4th Cir. 1997); *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 669, 971 (4th Cir. 1987); *Miller v. Wolpoff & Abramson, LLP*, 309 Fed. Appx. 40, 43 (7th Cir. 2008); *Hasbun v. County of L.A.*, 323 F.3d 801, 802–04 (9th Cir. 2003); *Smith v. John P. Frye, P.C.*, No. 10-CV-3366, 2011 WL 748363, at **1–3 (N.D. Ill. Feb. 24, 2011); *Baker v. Trans Union LLC*, No. CV-10-8038-PCT, 2010 WL 2104622, at **2–3 (D. Ar. May 25, 2010); *Huertas v. U.S. Dep't of Educ.*, No. 08-3959, 2009 WL 3165442, at **8–9 (D. N.J. Sept. 28, 2009); *Blanc v. Palisades Collection, LLP*, No. 06 Civ. 1626, 2007 WL 3254381, at *2, 9 (S.D.N.Y. Nov. 1, 2007); *Shah v. Collecto, Inc.*, No. Civ.A. 2004-4059, 2005 WL 2216242, at *1, 11 (D. Md. Sept. 12, 2005); *Beckstrom v. Direct Merch.'s Credit Card Bank*, No. Civ. 04-1351, 2005 WL 1869107, at *3 (D. Minn. Aug. 5, 2005); *Perretta v. Capital Acquisitions & Mgmt. Co.*, No. C-02-05561RMW, 2003 WL 21383757, at *2, *5 (N.D.

Cal. May 5, 2003).

Indeed, even in instances where the credit information of one who did not owe the debt was obtained, Court's have held that the intent of the user of the information that controls. *Trikas v. Universal Card Servs. Corp.,* 351 F.Supp.2d 37, 42 (E.D.N.Y.2005); *Beckstrom,* 2005 WL 1869107, at *3; *Miller v. Rubin & Rothman, LLC,* 2011 WL 4359977 (D. Minn.).

"Whether a permissible purpose existed is a question of law." *Breese v. TRIADvantage Credit Servs., Inc.,* 393 F.Supp.2d 819, 821 (D.Minn.2005) (citation omitted). "[S]o long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA." *Korotki v. Attorney Servs. Corp., Inc.,* 931 F.Supp. 1269, 1276 (D.Md.1996), *cited in Beckstrom,* 2005 WL 1869107, at *3 (D.Minn. Aug.5, 2005).

Here, Plaintiff fails to allege any facts to support his claim that FRS impermissibly accessed his credit report – specifically, why FRS, a collection agency attempting to collect a debt from him, would not have a permissible purpose to access his credit report. Plaintiff does not (nor could he) allege that FRS had any notice of his dispute before accessing his credit report. Plaintiff fails to allege even a single fact to support a FCRA claim against FRS, and his claim should be, therefore, be dismissed as a matter of law.  Indeed, the evidence indicates that FRS pulled Plaintiff's credit report to assist in its attempts to collect on a debt.[4] Aff. of Bowers, ¶ 17.

Accordingly, FRS had a permissible purpose for pulling Plaintiff's credit report.

B.      FRS and FIA did not violate 15 U.S.C. § 1681s-2(f).

---

[4]      To the extent that Plaintiff maintains that FRS did not certify its permissible purpose, there is no private cause of action. *See Breese v. TRIADvantage Credit Services, Inc.,* 393 F.Supp.2d 819 (D. Minn. 2005).

Plaintiff has alleged that FRS and FIA violated § 1681s-2(f) for allegedly failing to indicate that Plaintiff's debt was disputed.  However, no such section exists and Plaintiff's claim therefore fails.  Nonetheless, giving Plaintiff the benefit of the doubt, § 1681s-2(a)(3) requires that disputes be reported to any consumer reporting agency to which one is reporting.  However, there is no private cause of action under § 1681s-2(a)(3).  *See Chiang v. Verizon New England, Inc.*, 595 F.3d 26 (1st Cir. 2010); *Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057, 1059 (9th Cir.2002); *Peart v. Shippie*, 345 Fed. Appx. 384, 386 (11th Cir. 2009); *Bridge v. Ocwen Federal Bank,* 669 F.Supp.2d 853, 861 (N.D. OH 2009).

Accordingly, not only did Plaintiff bring his claim under a non-existent section, but had he brought it under the correct provision, it would fail because the applicable statute does not provide a private cause of action.

IV.   FRS And FIA Did Not Violate Massachusetts Law.

Plaintiff maintains that: (1) FRS violated 209 Mass. Code Regs. §§ 18.15, 18.16, 18.17 and 18.1; (2) FIA violated 940 Mass. Code Regs. § 7.08; and, as such,   (3) Defendants violated Mass. Gen. Laws ch. 93A.

A.   FRS did not violate 209 CMR §§ 18.15, 18.16, 18.17, or 18.18

Based upon the same allegations that Plaintiff uses to support his claims under the FDCPA, Plaintiff has alleged that FRS has violated §§ 18.15, 18.16, 18.17 and 18.18.  These sections are modeled after and mirror, with some additions to, the language set forth in 15 U.S.C. §§ 1692d-g, respectively.  As set forth above, FRS did not violate the FDCPA.

Section 18.18 contains language similar, or identical to, 15 U.S.C. § 1692g.  As set forth above, FRS sent Plaintiff an initial collection letter in June 2010 and Plaintiff failed to

dispute the debt until October 2010.   Accordingly, FRS was not required to respond to Plaintiff's dispute and acted properly when it closed its file.

Sections 18.16 and 18.17 contain language similar, or identical to, 15 U.S.C. §§ 1692e and f.  However, Plaintiff failed to timely dispute his debt as per both § 18.18 or § 1692g, thus any claims alleging violations related to the debt itself fail.  As Plaintiff's claim arise solely from his untimely dispute of the debt, Plaintiff's §§ 18.16 and 18.17 claim fails. Moreover, to the extent that Plaintiff's claims under § 18.16 arise from any allegations of improper credit reporting, FRS does not and did not furnish any information to any credit reporting agency, thus such claims fail.

In addition to the claims set forth above, Plaintiff does allege a violation of § 18.15. While § 18.15 does mirror 15 U.S.C. § 1692d, Plaintiff did not allege a violation of said section of the FDCPA.  However, Plaintiff has failed to make any allegations that would support a claim of harassment under § 18.15.   Absent such allegations, § 18.15, which prohibits "'the use or threat of use of violence,' the 'use of obscene or profane language,' harassment by repeated or anonymous telephone calls, home visits at odd hours, etc." was simply not violated.  *See Harrington v. CACV of Colorado, LLC*, 508 F.Supp.2d 128 (D. Mass 2007).

B.     <u>FIA did not violate 209 CMR § 7.08</u>.

Plaintiff asserts that FIA violated § 7.08 because it did not provide Plaintiff with its records related to the debt.   However, § 7.08 sets forth that such information is only required to be provided upon receipt of a request for the same and Plaintiff's Complaint is void of any reference to any such request.  As Plaintiff failed to request FIA's records, FIA

did not violate § 7.08.

C.    Defendants did not violate Mass. Gen. Laws ch. 93A

Plaintiff asserts that Defendants used unfair methods of competition or deceptive acts in conducting trade and commerce.  But it is undisputed that FIA sold the account to CollectAmerica, Inc. (now known as Square Two Financial), which subsequently placed the account with FRS.  FRS sent out four collection letters, and then closed its file upon receipt of Plaintiff's dispute.  Each and every action taken by FRS complied with the applicable state and federal laws.  Moroever, Square Two's placement of the file with FRS also did not run afoul of any state or federal law.  Indeed, for the reasons detailed above, the acts of FRS, Square Two, and FIA complied with the FDCPA and FCRA.  Accordingly, Plaintiff's 93A claims are exempted by 93A § 3, which provides that,

> [n]othing in this chapter shall apply to transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States.

Mass. Gen. Laws ch. 93A § 3.[5]

V.    Brian Bowers Did Not Violate Any Law.

Plaintiff has included Brian Bowers, president of FRS, as a defendant in this action. However, other than including Mr. Bowers as a defendant, the Complaint fails to set forth any action done by Mr. Bowers that would lead to any liability against him, nor does the Complaint allege that Mr. Bowers is vicariously liable for any action.  Thus, Plaintiff's claims against Mr. Bowers fail to state a plausible right to relief under a *Twombly/Iqbal* analysis. Moreover, for the same reasons set forth above, no party to this action has violated any law.

---

[5] In addition to these dispositive points, the Plaintiff never sent the Defendants a Chapter 93A demand.  The Defendants reserve the right to raise this issue later if need be.

## CONCLUSION

For the foregoing reasons, the Defendants request that the Court grant their Motion and dismiss all claims against them.

FINANCIAL RECOVERY SERVICES,
BRIAN BOWERS, FIA CARD SERVICES,
N.A.

By its attorneys,

/s/ John J. O'Connor
John J. O'Connor
BBO # 555251
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA  02210-2261
(617) 951-2100
joconnor@peabodyarnold.com

Dated:  November 30, 2011.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of November, 2011, I served a copy of the attached Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings/ Summary Judgment via ECF on all counsel and parties of record.


/s/ John J. O'Connor
John J. O'Connor

756402_1
15799-95723